UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 22-cr-177 (SRN/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Robert Charles Banks, | |
| Defendant. | |

Defendant Robert Charles Banks moves to suppress evidence obtained pursuant to warrants which he argues lacked probable cause. Because each of the warrants was supported by probable cause, and because the good-faith exception would apply even if probable cause were lacking, the Court recommends Banks's motion [Dkt. No. 18] be denied.

**FINDINGS OF FACT**

In September 2020 the Hennepin County Sheriff's Department executed a search of Defendant Banks's residence pursuant to a warrant. Def.'s Supplemental Memorandum in Support of Motion for Suppression (Suppression Mem); Dkt. No. 29-1 at 2.[1] During the search, Banks was present in his bedroom. *Id.* The search uncovered multiple firearms and ammo, as well as marijuana, cocaine, MDMA, methamphetamine, and paraphernalia associated with drug dealing. *Id.* In Banks's bedroom, law enforcement located two cell phones, a black Qlink phone and a white iPhone. *Id.* Other persons in the

---

[1] Both Banks and the Government attached copies of the two subject search warrant applications and warrants as exhibits to their briefs. The Court will only refer to one set of those warrants—Dkt. Nos. 29-1 and 29-2—throughout this discussion.

1

residence at the time of the search told law enforcement those phones did not belong to them. *Id.* Officer Anthony Glanzer of the Hennepin County Sheriff's Department then applied for another warrant to search the cell phones ("cell phone warrant"). *Id.* at 1-4. The cell phone warrant application noted that the data from "locked" phones must be extracted in its entirety, but specifically listed the phone's "data, text messages, call logs, digital photographs, address book information, video messaging apps, GPS locations, and any other communication and information directly related to narcotics possession, sale and weapon possession" as the subject of the warrant and search. *Id.* at 1, 3. Hennepin County District Court Judge Luis Bartolomei issued the warrant. *Id.* at 7.

Banks argues the cell phone warrant was defective for lacking probable cause. Defendant's Mot. for Suppression of Evidence Obtained Pursuant to the Execution of Search Warrants (Mot. for Suppression); Dkt. No. 18. He claims the warrant application did not establish a nexus between himself and the phones or between the phones and any alleged criminal activity. *Id.* Lastly, Banks contends the warrant was overbroad because it sought "to search the entire phone, rather than the portions of the phone where evidence may be found." *Id.*

Also in September 2020, Officer Glanzer applied for a warrant to search the content of Banks's Snapchat account ("Snapchat warrant"). Suppression Mem.; Dkt. No. 29-2. In support of the Snapchat warrant application, Officer Glanzer asserted that he was involved in investigating street gangs in the Twin Cities area; that as part of that investigation he became aware of the Young N Thuggin (YNT) gang; that YNT members were selling large quantities of marijuana, crack, and heroin. *Id.* at 4. Glanzer also asserted he became aware of a specific YNT member, the Defendant Banks, who is

2

known by the nickname "Trouble." *Id.* Furthermore, Officer Glanzer learned from a confidential reliable informant (CRI) that Banks uses the Snapchat name "ynttrouble." *Id.* The CRI had seen a photo of a YNT gang member in possession of a handgun and large quantities of marijuana for sale. *Id.* According to Officer Glanzer, that YNT gang member was Banks. *Id.* Banks contends the Snapchat warrant lacked probable cause because it did not establish a nexus between his Snapchat account and any criminal activity. Suppression Mem. at 5; Dkt. No. 29.

Because the cell phone warrant was not overbroad and because both warrants were supported by probable cause, the Court recommends denial of Banks's motion to suppress.

## CONCLUSIONS OF LAW

### I. Legal Standard

The Fourth Amendment prohibits "unreasonable searches and seizures," and provides that law enforcement may only obtain a warrant "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances." *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016). To be valid, a warrant must set forth "sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place" *Id.* The totality-of-the-circumstances test for reviewing a probable cause determination means that such inquiries are "not readily, or even usefully, reduced to a neat set of legal rules." *Florida v. Harris*, 568 U.S. 237, 243 (2013). While judges issuing

search warrants may "draw reasonable inferences from the totality of the circumstances" *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009)), a warrant issued based only on a supporting affidavit that merely asserts conclusions rather than facts may be invalid. *Aguilar v. Texas*, 378 U.S. 108, 113 (1964) (internal citations omitted).

Reviewing courts must afford "great deference" to the probable cause determination of the judge who issued the warrant and should resolve even "doubtful or marginal cases" in favor of a warrant's validity. *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (citation omitted); *see United States v. Ventresca*, 380 U.S. 102, 109 (1965). So long as the issuing judge had a "substantial basis" for concluding the "search would uncover evidence of wrongdoing," this Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999).

## II. The Cell Phone Warrant was Supported by Probable Cause and was Not Overbroad

Banks argues the cell phone warrant was invalid for want of probable cause. Suppression Mem. at 2; Dkt. No. 29. He claims the warrant application did not establish a nexus between himself and the cell phones. He argues the only averment about ownership of the cell phones was simply that they did not belong to the other people present in Banks's apartment. *Id.* That others denied ownership, Banks argues, does not establish that he owns the phones. *Id.* This argument ignores the critical fact that the cell phones were found in Banks's bedroom where Banks was present at the time of the search. Dkt. No. 29-1. While it is certainly possible those phones belonged to someone else entirely, all things considered, a reasonable person could infer the phones belonged

4

to Banks because they were found in his bedroom, where he was present, and were not owned by anyone else in the residence. *See Harris*, 568 U.S. at 243.

Banks also argues the cell phone warrant application failed to establish a nexus between the cell phones and criminal activity. He says the application's allegation that drug dealers keep sources' and customers' phone numbers in their phones and retain data on call history is too general to establish probable cause about Banks's alleged criminal activity. This argument, too, misses the mark. The items found in the first search, including weapons, narcotics, and digital scales, together with "the virtual certainty that drug dealers use cell phones," constitutes probable cause to suspect evidence of drug dealing and other criminal activity would be found in the cell phones. *United States v. Eggerson*, 999 F.3d 1121, 1127 (8th Cir. 2021); *cf. United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022) (finding it proper for an issuing judge to "logically infer that a drug dealer would store contraband at his residence").

Lastly as to the cell phone warrant, Banks argues it failed to identify any limit on the information to be searched. Suppression Mem. at 4; Dkt. No. 29. A valid warrant must describe with particularity the place to be searched. U.S. Const., amend IV. That requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *United States v. Pennington*, 287 F.3d 739, 744 (8th Cir. 2002) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). The cell phone warrant was sufficiently particular. As noted above, the warrant acknowledged the possibility that the entire contents of the phones would need to be extracted, but it clearly limited the search in subject matter to only "data, text messages, call logs, digital photographs, address book

5

information, video messaging apps, GPS locations, and any other communication and information directly related to narcotics possession, sale and weapon possession." Dkt. No. 29-1. That list circumscribes the search, linking the search to its justifications which related to drug dealing and trafficking. The warrant was not overbroad.

### III.    The Snapchat Warrant was Supported by Probable Cause

Banks argues the Snapchat warrant lacked probable cause because it failed to establish a nexus between the account and possible criminal conduct. Suppression Mem. at 5; Dkt. No. 29. He claims the warrant made "no averment about Mr. Banks and this case in particular." *Id*. Yet, the search warrant clearly connected Banks to this Snapchat account because its name "ynttrouble" referenced Banks's affiliation with the YNT gang as well has his nickname. Furthermore, the CRI told Officer Glanzer the Snapchat user ynttrouble had posted photos of narcotics and firearms to Snapchat. Dkt. No. 29-2. All of this taken together forms a chain linking Banks to the Snapchat account and the Snapchat account to illegal activity (the drugs and guns). The Snapchat warrant was supported by probable cause.

### IV.    The Good Faith Exception Applies Even if There Was no Probable Cause

Even if probable cause were lacking, the good faith exception applies to both warrants. Under the good faith exception, disputed evidence is admissible "if it was objectively reasonable for the officer executing the warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Norey*, 31 F.4th 631, 635 (8th Cir. 2022). Put differently, the good faith exception asks "whether a reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Williams*, 976 F.3d 807.

6

809 (8th Cir. 2020). Reliance on a warrant lacks good faith where "the issuing magistrate wholly abandoned his judicial role," where the warrant affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or where the warrant is facially deficient for failing to "particularize the place to be searched or the things to be seized." *United States v. Leon*, 463 U.S. 897, 923 (1984) (internal citations and quotation marks omitted).

      The good faith exception would certainly apply here. There is nothing on the face of either warrant application that would make it obvious to a reasonably well-trained officer the warrant was improperly issued or that Judge Bartolomei abandoned his duties in issuing these warrants. The supporting information Officer Glanzer included in his applications provided sufficient indicia of probable cause. The warrants themselves supplied reasonable particularity. The cell phone warrant identifies the specific phones ("Black Qlink phone and White I phone in black and clear case") and the specific data to be reviewed ("Data, text messages, call logs, digital photographs, address book information, video messaging apps, GPS locations, and any other communication and information directly related to narcotics possession, sale and weapon possession.") Dkt. No. 29-1. The Snapchat warrant identifies a specific Snapchat account to be searched ("Snapchat account with username ynttrouble") and a specific date range limiting the data sought ("08/20/2020 to 09/04/2020). Dkt. No. 29-2. In total, this information is more than sufficient for an officer to have relied in good faith on the warrants executed by Judge Bartolomei.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS:

Banks's Motion to Suppress Evidence Obtained Pursuant to the Execution of Search Warrants [Dkt. No. 18] be denied.


Dated: December 2, 2022                    s/David T. Schultz
                                                                     DAVID T. SCHULTZ
                                                                     U.S. Magistrate Judge